20-1734. Good morning, counsel. Ms. Stern, how are you? Good morning. I apologize. This was working for me earlier and not now. No worries. No worries. We hear you fine. Great. Thank you very much. I'll begin whenever the court's ready. We're ready. Thank you. Good morning, and may it please the court. Samantha Stern, Assistant Federal Public Defender, on behalf of Gregory Brown, I'd like to reserve three minutes for rebuttal. Sure. The dual sovereignty doctrine springs from the structure of American federalism, under which the separation of state and federal powers was considered a bulwark against tyranny. That separation was not present in this case because the state and federal governments opted to co-prosecute as a single sovereign. Neither yielded, and cross-designation allowed each to avail itself of the laws in the course of the other. As a result, what we have here are two prosecutions for the same offense by the same super-sovereign. Okay. Well, let's start with that, ma'am. Normally, double jeopardy is phrased as you can't be convicted or prosecuted a second time after an acquittal. You can't be convicted a second time after a first conviction stands, and you can't have multiple punishments in the same proceeding. We're not talking about multiple punishments. There was no acquittal here. The only conviction there was was vacated in a way that allows the government to retry. It wasn't vacated for insufficient evidence. So why is there even a double jeopardy problem? You don't contend there would be any double jeopardy problem with re-prosecuting your client in state court. So why is it even a double jeopardy problem to re-prosecute in federal court? Your Honor, we would contend that it's a double jeopardy problem in either forum, and that's because of the intentional government misconduct that is the reason why we even need a retrial today. And in that respect, we are asking that this court apply the rule from Oregon versus Kennedy, which recognizes that there can be a second jeopardy bar in instances where the defendant's interest in having his guilt finally decided by the tribunal that was empaneled as his first trial was subverted by intentional misconduct that then either results in a mistrial or in this instance requires a retrial today after it was discovered many years later. This isn't really a double sovereignty case at all. This is just a straight, was there intentional misconduct that bars re-prosecution in either forum or not? I don't see a reason why he could be prosecuted in the state court, but not the federal court, correct? I agree, Your Honor. This bar would apply in either state or federal court. However, the district court here denied Mr. Brown's double jeopardy claim because of the dual sovereignty doctrine. It didn't even reach the second jeopardy issue because it found that the dual sovereignty doctrine applied and that this federal prosecution, which is clearly a joint federal and state prosecution by a super sovereign, found that it was somehow different from the very same state and federal prosecution that took place in state court over 20 years ago. But I agree with Your Honor, this double jeopardy problem is the same double jeopardy problem we would have if this case were proceeding for the second time in state court. And that's because Mr. Brown's interest in having that first state court jury decide his guilt finally has been subverted by the misconduct that took place over the course of many years in this case. And it's the reason he needs to face a second jeopardy. But I would like to talk with this panel about why the Barkas exception applies in this case, because this is the reason why we are before this court. Before we move on to Barkas, can we stay with Kennedy for a minute? What's your best evidence that the government's conduct that resulted in a mistrial was intended to provoke Mr. Brown into moving for a mistrial? Your Honor, our position is that this court should apply a standard that makes sense, given that we didn't have a mistrial request in this case. And the Second Circuit has found that there really is a logical basis for sort of conceiving of the intent requirement under Kennedy a little bit more broadly. That is, you know, intent to either provoke a mistrial or to avoid an acquittal that the prosecution thought was likely. But in any event, I think there is evidence of intent to provoke a mistrial here. And I would direct Your Honor to really what occurred at the close of the case when the defense became aware of the existence of the federal reward fund and about the ATFs reaching out to Briceland Street residents at that time. And the defense sought to reopen. They wanted to make the jury aware of the federal reward fund and certainly at least be able to argue that the Commonwealth's witnesses were influenced by that reward. The prosecution vehemently opposed those efforts. In fact, the AUSA cross-designated in the matter made affirmative representations to the trial court that that reward had never been discussed. And because, you know, it would have taken bringing back all of those witnesses and questioning them about it, the district, or excuse me, the trial court at the time declined counsel's motion to reopen on that basis. Now, that I think is really clear evidence of really sort of acceptance of a risk or perhaps intentional provocation of a defense mistrial request. And although we didn't have that in this case, admittedly, but I do think that the spirit of the Kennedy rule is really to recognize that a prosecution that seeks to either cut the defendant's first trial short, they want to abort because they know they don't have what they need. Either the attempt to abort or also just the subversion of the defendant's right to have his guilt finally decided misconduct that's motivated by that. We recognize that the defendant's double jeopardy rights must prevail because part of it is the defendant's right to have his guilt finally decided by that by that tribunal. So what do we make, what do we make of the PCRA courts findings. With respect to government's conduct. The PCRA court findings which were supported by the record here reflects that there were Brady and maybe violations at this first trial and certainly Your Honor can rely on those PCRA court findings they were made part of the record in this case. In addition to the state court trial records and the PCRA testimony which supports those findings. The PCRA court found intentional misconduct on behalf of the lead case agent here. Does that get imputed for purposes of the Kennedy exception I know that gets imputed for purposes of Brady, but is that enough to say that the prosecution intended to broke a mid trial mistrial just because the case agent knew about this and concealed it. Yes, I think this court can apply imputation rules. The Kennedy bar is all about addressing government overreaching. And it should make no difference whether the overreaching is by the case agent or the prosecutors the prosecutors are charged with knowing what their case agents are doing the line, the line of cases that deal with the prosecution team. Otherwise, we're going to have rules that really encourage prosecutors to turn a blind eye to what their case agents are doing and here. PCRA court found overwhelming evidence that this case agent gave witnesses and expectation of payment that that was suppressed those witnesses them went on to testify a trial that they expected nothing. And then you have, which I think is very relevant at the close of this case efforts by the defense to discuss this award with the jury, which were met with staunch resistance and which the trial court didn't allow. So, this is a very unique case, and the Kennedy exception is fit for these for these circumstances where although we don't have a mistrial request, we have, we have unfairness and denial of Mr. Brown's right to have that first jury decide his guilt that was that was really due to a pattern of constitutional violations at his first trial. If it's all right, I would like to address the Barkis exception to the dual sovereignty doctrine, the court in Barkis recognized while applying the dual sovereignty doctrine that prosecutions by ostensibly different sovereign could be treated as the same prosecution by the same sovereign if they were in essential fact, the same sovereign prosecuting the second as the first, and that's precisely what we have here, Mr. issue because if there ever was going to be a case it was Barkis in Barkis, the, you know, the state basically handed everything up on a silver platter, and still, it wasn't qualified so maybe Barkis is just dictum, but whatever survives of that dictum must be incredibly narrow because it didn't qualify the facts of Barkis so you know, it would have to be some kind of extreme manipulation and here. Do we have any evidence of anything approaching, you know, kind of deliberate plot like that to circumvent double jeopardy. Your Honor, here we have much stronger facts than the court was presented with in Barkis. We have co prosecution teams comprised of state and federal prosecutors, first in state court, and now in federal court and that was by design. It's always been recognized that there was state and federal jurisdiction for this prosecution, and at key points in this case these sovereigns have met, they've discussed the case, and they've chosen a forum and they've chosen to proceed together, and the way they've done that is through which allows these prosecutors to appear in the sovereignty of the other to avail themselves of the laws and the courts of the other. Critically, Your Honor, in this case, neither prosecuting entity has yielded to the other as is customary. Normally you have with a null prosecution, the Commonwealth actually receding from the case, no longer pursuing the case. Here we have instead bargained for continued involvement of the Commonwealth in this case. And make no mistake, it's very clear from this record that the Commonwealth considers this federal prosecution to be their prosecution as well. And this court needn't look no further than the on the record statements of the Deputy District Attorney who argued for the null process in state court as this after the federal indictment was issued. She represented to the state trials court that the federal prosecution had many benefits to the Commonwealth. Evidentiary benefits, benefits in terms of enhanced penalties. Those statements make clear that this cross designation, she is not appearing in this case as a United States Attorney representative. She is very much appearing in these proceedings as a representative of the Commonwealth and to vindicate the Commonwealth's continued interest in this prosecution. So, Your Honor, in Bartkus, we did not have anything remotely close to this co-prosecution that we have in this case. You had an involvement by the continuing involvement by essentially federal investigative forces, a case agent who continued to be involved and who, like you said, provided a sort of silver platter and strengthened the case as it proceeded to state court. Here, what we have is much, much stronger. If there was ever a case for recognizing super sovereign and an exception to the dual sovereignty doctrine, it's this case. Mr. Stern, among the requests you make would be to remand this for an evidentiary hearing. What evidence were you denied? What evidence would you pursue to support your arguments? We think the record is very clear on the dual sovereignty issue, Your Honor. And so we think there's enough on this record for this court to rule that the Bartkus exception applies. And the same can be said for the record of intentional misconduct at the initial trial and the fact that this is a second jeopardy. One option, however, for this court, if it finds that the record support for either of those arguments is lacking, would be to remand for the district court either to allow for discovery on the dual sovereignty issue or to allow for, under Oregon versus Kennedy, excuse me, for the initial fact finding as far as intent on the part of the prosecution for that initial fact finding to happen in the district court. I understand all that, but what specific evidence would you want to supplement the record with? Well, we did seek discovery on the dual sovereignty issue that wasn't ultimately granted. You know, so if the court found that the record was lacking as far as the Bartkus exception, we'd ask that you remand for that. Specifically, we sought information relating to the sort of cross designation and the reasons for it after the prosecution had offered reasons for it that we didn't think were actually supported by the circumstances presented here. And so in that respect, you know, a remand for discovery might be appropriate, but again, we think the record as it stands supports application of the Bartkus exception and so that that shouldn't actually be necessary here. Wasn't the district court satisfied that you already have everything that's not privileged? No, the district court didn't actually find that. That's the government's argument. What the district court ultimately found was that we couldn't proceed on discovery because it wasn't clear that this was even a second jeopardy. The court declined. Of course, our argument was that the privilege law didn't even allow us to actually vet the claims of privilege. And so the only thing for the court to do would be to do an in-camera inspection to determine if the privilege was properly asserted. So no, the district court sort of never put an imprimatur on the claims of privilege in this case. And arguably, you know, the government really waived any privilege by offering affirmatively, you know, selective evidence of, you know, the reasons for the cross designation back in 1996 and now in this case. And I may have forgotten to request rebuttal time. I'm certainly happy to address any further questions on rebuttal. You reserved three minutes. We'll get back to you. Oh, I did. Okay. Thank you. Thank you. We'll hear from you shortly. Miss Warden Rogers. Thank you. Good morning. May it please the court. Haley Warden Rogers for the United States. Three Pittsburgh firefighters lost their lives battling a house fire. We believe that we can prove beyond a reasonable doubt that the fire was an arson and that Greg Brown is responsible for that arson. And while we're well aware of the troubling allegations of a Brady violation of the state trial, we stand by our decision to adopt this case and bring a measure of closure and justice to the public and the victim's families. Most appeal, however, concerns a narrow issue, whether the double jeopardy clause bars this federal prosecution and there are two independent bases to affirm as a matter of law. First, under the dual sovereignty doctrine, as, as you recognized, Judge Bibas, a federal crime is simply not the same offense as a state crime. This really is a question of the Kennedy exception, although we think that the case could be decided as the district court did by reference to dual sovereignty. Why don't you address. Could you address counsel's argument with respect to the Kennedy exception and and what the overlay with the Brady violations. Yes. So, first of all, the council mentioned that misconduct occurred, or there was intent to obtain a mistrial and points to the post trial motion to reopen. There are a couple of responses to that. First of all, as the picker court found the prosecutors had no knowledge of any promise or expectation of a reward. There were multiple hearings at which these two witnesses right and Abdullah had denied any bias or expectation of a reward. The prosecutors did their due diligence in this case and had no reason to believe that there was any expectation of what about agent weeks can his conduct can be imputed to the prosecutors. This conduct is intruded to the prosecutors for purposes of Brady, which doesn't look to good faith or bad faith that imposes an obligation on the prosecutors to conduct due diligence. And if they miss something that that certainly would still be a Brady violation, even if it was known by a member of the prosecution team. And that's what happened here. He obtained a new trial. However, it's far from clear whether a an agent's misconduct, if that even if that indeed happened here, whether that would be imputed to the prosecution under the Kennedy exception. The Kennedy exception speaks in terms quite clearly of the prosecutors intent to obtain a mistrial, which in the context of double jeopardy, a defense, a defense requested mistrial doesn't bar a second trial. But if if a defendant objects to a mistrial, then a retrial might be barred by double jeopardy, unless there's manifest necessity for it in, for example, the case of a hung jury. So Kennedy is a very narrow exception that's really focused on an improper intent to obtain a second trial by loading the defendant into moving for a mistrial here, even if we could extend it beyond the mistrial context. And we don't think it can be. It would not encompass the kinds of misconduct that's alleged here, where an agent apparently, according to the Picker court, was trying to obtain a conviction. There was never any point at which the government believe the prosecutors believed that there was a problem with respect to these witnesses. If I understand you correctly, because there was no request for mistrial in the state court. It's pretty much a hard stop on the Kennedy analysis. Yes, Your Honor. Yes. Even if it could be extended as the defense suggests, for example, so in Oregon v. Kennedy, I should say the court made a point of clarifying some ambiguity in the case law up to that point to decide whether intent to cause a mistrial was required, or if other forms of And the majority opinion clearly rejected the harassment and overreach as an unworkable standard. The concurrence there, which would have applied a harassment and overreach standard, actually found that the case there wouldn't meet that standard, because there was no evidence that the prosecutor believed that they were about to lose their case and engaged in misconduct to turn it around. Here again, there's the prosecutors here believed reasonably, there had been no Brady violation that these witnesses were truthful when they testified repeatedly that they had no expectation of a reward. If WIC did withhold this evidence, it defies logic that even his goal would be to obtain a second trial. There's no apparent benefit to a second trial. If anything, this is the standard situation where if there were an intentional Brady violation, it would be to obtain a conviction in a first trial. And the rule for Brady violations, the default rule, is that the remedy is a new trial at which the exculpatory or impeachment evidence comes in. We have exactly that here. Mr. Brown will have the opportunity to cross-examine these witnesses at a new trial. I think it's also worth noting on the Kennedy exception that this was potential impeachment evidence, which, while in the Brady context impeachment versus exculpatory evidence is irrelevant to whether there was a Brady violation, I do think that it lends some power to the government's position here that the Kennedy exception can't be invoked because this is not the kind of exculpatory evidence that came to light that shows that we got the wrong guy. This is potential impeachment evidence that could and should have been introduced on direct of these witnesses, just like any other situation, for example, where you have a reward or a cooperator where they might be expecting a benefit from their testimony. Well, the court has no further questions on the Kennedy issue. I would like to at least briefly address Barkas. Please do. Gamble, in 2019, held that an act that violates state and federal law is two offenses. It's not the same offense for double jeopardy purposes. The majority's opinion in that 7-2 decision is plainly, it plainly turns on the text of the double jeopardy clause. And they, after that, go through and reject many of the arguments that had been raised by appellate courts, criticizing the dual sovereignty doctrine, and ultimately decided that the dual sovereignty doctrine is alive and well and remains a valid principle today. The Barkas exception, if it exists, is difficult to square with this plain text reading of Gamble. And if it does exist, it's limited to the situations that Barkas itself mentioned, where there is one sovereign acting as the tool of the other, such that the second prosecution is a sham. Here, Brown has never claimed that the federal government controlled the state case or that the state government is controlling the federal case. Instead, Brown urges a new theory, an expansion of this dicta to a super sovereign, which is a theory that's never been applied by any court. Well, what do you make of counsel's argument that they had the same prosecutors being cross-designated by the respective other sovereign, and you had these government witnesses and government reward money in play in both cases? The witnesses are certainly at play in both cases, just by virtue of the case. But in terms of the cross-designation, as we note in our brief, many courts have found that cross-designation doesn't undermine sovereignty. The name of the case escapes me. I believe it's the GPS Auto case out of the Second Circuit. It benefits both sovereigns to potentially call on experts or people with experience from the other sovereign to help with the case. Now, here, as was revealed in the examination of ABA Awash in the evidentiary hearing in federal court on this issue, AUSA Sweeman was cross-designated because of his experience in arson cases. That's at Appendix 374 to 76. ABA Walker had much more close involvement in the state case after the PICRA hearing, and so was intimately knowledgeable about the facts, and it helps the federal government to vindicate its interest in this case to avoid the ramp-up of having to gather all of that and relearn all of that information. I also want to note that while the confluence of facts here about the state and federal cooperation is unusual, the component parts are not. Federal investigation of arsons by ATF is typical. Federal agencies, including ATF, are expected to support local law enforcement. And when there is concurrent jurisdiction, as in this case, which is undisputed, the consultation about the appropriate forum in which to pursue the prosecution is not only common, but actually encouraged by the Pettit policy, the Department of Justice's Pettit policy. Also, cross-designation of ADAs to the federal court is not uncommon, particularly in gun and opioid cases. It's less common for AUSAs to be cross-designated, but it does happen. And finally, it's not unheard of for the federal government to adopt a state case after a conviction or an acquittal on related charges where there remains a federal interest that's unvindicated. Of course, as you point out here, we don't have that because he is, for purpose of the double jeopardy clause, jeopardy never attached in the remand from state court. I also want to just point out a couple of facts that Brown does not mention that undermine his super-sovereign argument. The first is that the DA's office independently controlled the entire state indictment process, including who would be charged, which offenses would be charged, and that was also in ADA Alwesh's testimony. While the ATF was involved as an investigator, again, that's typical, and courts have routinely approved of that level of cooperation. The DA's office also handled the direct appeal without any involvement from the U.S. Attorney's Office. That was testified to by ADA Romilly, who handled the appeal for the district attorney's office. The DA's office also independently litigated the federal habeas proceeding and the PICRA proceeding and the proceedings on remand in the state court. While ADA Sweeney did testify as a witness at the PICRA proceeding and was available for consultation by ADA Wabi when he was preparing the federal habeas and PICRA proceedings, he wasn't involved as a party or an attorney in that case. ADA Sweeney's role in the state case was limited to the time surrounding the trial, preliminary hearing, the trial, certain post-trial motions, and then sentencing. As for the federal case, there were more than 50 communications between and among members of the U.S. Attorney's Office and the Department of Justice attorneys whose responsibility is to advise on the Pettit policy. This was not a rubber stamp of the state prosecution. The U.S. Attorney decides whether to approve prosecutions in our district. This was U.S. Attorney Hickton from 2016. From the two administrations previous, he signed off on this prosecution, and the U.S. Attorney determines staffing, including whether to staff AUSA Sweeney or some other AUSA. Bottom line, there were different U.S. Attorneys involved, different district attorneys involved, different AUSAs involved, too, in the federal case. This is not like Belcher, which is the only case that's ever really applied the Barkas exception, and even then it was on collateral estoppel, not on actually double jeopardy grounds. There was a single prosecutor, an elected state prosecutor, who brought charges in state court and then simultaneously brought charges in federal court with apparently a lack of supervision from the U.S. Attorney's Office, or at least meaningful supervision. This case is not that. Is your position that Barkas does not exist, or that it just doesn't apply here? Our position is that it does not exist. It can't be squared with Gamble's focus on the same offense language. If it does exist, it's much narrower than Mr. Brown would suggest. Unless the court has further questions, we would rest on our briefs. Thank you very much, Ms. Warden-Reuters. Thank you. The interruption. I do see that Ms. Stern is connected to Zoom, so I'd like to bring her in that way. Sure. Okay. Thanks. Ms. Stern, if you can hear me, once we connect your Zoom connection, you can go ahead and hang up the phone. All right, Ms. Stern, can you hear me? Yes, I can. Thank you. There you are, Ms. Stern. I'd like to address just a couple of points. First, counsel's argument that Gamble and the same offense language there means that the Barkas exception no longer exists. I'll just note that that argument or that thread that's sort of the textual hook for the separate sovereigns doctrine that's recognized in Gamble. That was recognized long before Barkas and long before the court indicated and dictated that there might be a limitation on the doctrine. It was identified as early as the Lanza case in 1922. So notwithstanding that textual hook, the Supreme Court recognized that there might be exceptional circumstances that warrant the conclusion that a prosecution by ostensibly a different sovereign is actually nonetheless a prosecution by the same sovereign. And the court there is really looking not at a formal approach of who's charging Commonwealth and United States. They are looking at totality of the circumstances and asking whether which party or whether both parties, perhaps in this case, are fueling and controlling the litigation. And that's where that sham and cover language comes into play. So it's our position, and I think very much supported by Lanza and Barkas, that notwithstanding Gamble and the court's adherence to the dual sovereignty doctrine there, there may still be limitations on this doctrine. And of course, the court in Gamble didn't have occasion to consider those limitations because Gamble involved a very clean case of successive state and then federal prosecution. There was no allegation in Gamble that the state and federal governments had come together, such as the way they have done so here, in a way that defeats application of the doctrine. The doctrine depends on the idea that these sovereigns are acting separately, and here really nothing could be further from the truth. In every case that's addressed the possibility of this exception applying, none has addressed it under circumstances like what we have here, which is the employment of these prosecution teams involving state and federal prosecutors. I submit that is the most unique aspect of this case. It makes this case a stronger case for application of the exception than any other. And if I could briefly address their Kennedy argument. I think the reason for the narrow approach that the court took in the Kennedy case was in part because when the defense requests a mistrial and gets a mistrial, in some ways he's waiving his right to have his guilt decided by that jury. And so we request a very, very specific intent on behalf of the prosecutor to provoke that mistrial. Because otherwise it seems that perhaps the defendant had an interest in cutting his trial short. And I think if you agree with the Second Circuit, and as this court has indicated in the Curtis case, that it makes sense to logically apply the Kennedy bar beyond simply the mistrial context, then I think the intent requirement also has to be slightly reframed. And we're not suggesting that it would apply broadly where you have any government overreach that prejudices the defendant. We really look at the circumstances that existed at the time of the state court trial, the time when that overreaching and misconduct was undertaken. And we ask, was there a real possibility of an acquittal, a real fear of an acquittal? And we have that here. And I remind this court that the jury in the state court trial actually rejected the Commonwealth's theory of how this offense occurred, because they actually acquitted Mr. Brown and his mother of the conspiracy counts. And while I make much of the fact that this is mere impeachment, this impeachment went to the heart of their case. It brought the credibility of their two key witnesses into serious, serious doubt by introducing the fact that they have financial incentive for their testimony. And we're talking about Keith Wright, who basically destroyed Mr. Brown's alibi. And then Ibrahim Abdullah, who said that Mr. Brown confessed to starting this fire. These were the two most essential witnesses to the Commonwealth's case. So to couch it as mere impeachment simply doesn't capture the picture at the time of the trial. I think the government has no real answer to the extremely unique facts that we have present in this case. Mr. Brown's double jeopardy interests have been trampled on. He has now been forced to endure the anxiety, the oppression of prosecution by two sovereigns, stemming back to 1996 and now again today. We ask that this court apply the dual sovereignty doctrine, reverse and remand these proceedings. Thank you very much, counsel. Thanks for your wonderful briefs, and we'll get back to you in the not too distant future. Have a good day. Thank you.